[No. 22126. Department Two. April 8, 1930.]

J. W. YOUNG, *Appellant,* v. GLOBE INDEMNITY COMPANY
*et al., Respondents.*[1]

*W. B. Mitchell,* for appellant.
*McCarthy, Edge & Lantz,* for respondents.

FULLERTON, J.—In this action, instituted in the superior court of Spokane county, the appellant, Young, sought to recover from the respondents, Globe Investment Company, J. E. McGovern and Myrtle B. McGovern, the sum of one thousand dollars, deposited with the respondent J. E. McGovern as security for bail furnished one C. E. Sparhawk.

It appears from the record that in the early part of February, 1927, Sparhawk was arrested on a criminal

[1]Reported in 286 Pac. 651.

warrant issued out of a justice's court of Spokane county, and confined to the county jail to await trial. Bail, pending the trial, was fixed at the sum of $1,000. The respondent Globe Investment Company is a foreign corporation engaged in this state in the business of furnishing security in "judicial litigation," and the respondent J. E. McGovern is its resident agent for Spokane county.

About the middle of April, 1927, Alice D. Hossler, a sister of Sparhawk, applied to McGovern for a bail bond on Sparhawk's behalf. At this time, McGovern informed her that bonds of the sort required would not be furnished by his company without either a deposit of cash equal to the amount of the bond required or a deposit of liquid assets in the way of security equal thereto. Mrs. Hossler did not then make the necessary deposit, but some two days later appeared with a cashier's check from a local bank for the amount of $1,000, drawn in her favor, which she indorsed and turned over to McGovern. The required bail bond was then furnished.

One Joseph J. Lavin, an attorney at law of this court, had been employed to defend Sparhawk, and appeared at the office of McGovern with Mrs. Hossler at the time the bond was executed. After the execution of the bond, it was handed to him, and he proceeded to the justice's court for the purpose of procuring an order for Sparhawk's release from custody.

On reaching the justice's court, he learned that the charge against Sparhawk had been dismissed in that court by the state, and that a new charge against him had been filed in the superior court of Spokane county on which he had been arrested. Bail on this charge had been fixed at $1,000, and Lavin, on discovering the facts, informed Mrs. Hossler of the situation. They then returned to McGovern's office, where Mrs. Hoss-

ler made an application for a bail bond on the new charge, agreeing that the cashier's check should stand as security for the bond. A bail bond was then issued, filed with the superior court, and an order obtained releasing Sparhawk from custody pending a trial on the charge pending against him in that court. The charge in the superior court was not pressed by the state, and was later dismissed and the bondsman exonerated.

Lavin contended that Mrs. Hossler had employed him for an agreed fee to defend Sparhawk, and had promised to give him an order on McGovern for the amount of the fee to be paid out of the money deposited with him. At a meeting held in McGovern's office, Lavin sought to have Mrs. Hossler comply with the agreement as he had understood it, when Mrs. Hossler denied that she had employed Lavin, denied that she had made any such agreement, and refused to give the requested order. Lavin then said that he would be required to test their differences in the courts, and shortly thereafter began an action against her to recover on the contract between them as he had understood it.

At the same time he sued out a writ of garnishment which he caused to be served on McGovern. McGovern answered the writ, in which he set out the conditions on which the money was deposited with him; further answering, he alleged that he was not indebted to the defendant Hossler and that he had no money or property in his possession belonging to her, except as therein stated. Mrs. Hossler did not contest the return, although she appeared and contested the right of Lavin to recover against her.

The trial resulted in a judgment in favor of Lavin, and an order entered on the same day in the garnishment proceedings directing the garnishee to pay into

court the amount of the judgment and costs—totaling $280—to be applied in satisfaction of the judgment. The garnishee made the payment as ordered, and subsequently tendered the sum remaining in his hands to Mrs. Hossler, which tender she refused to accept.

The appellant, Young, for her cause of complaint, alleged that she had furnished the money deposited with the respondents, that she had never parted with her title to the money, and that J. E. McGovern, personally and as the agent of the other respondents, was informed and knew at the time the money was deposited with him that it was the money of the appellant, and was informed and knew that it was to be returned to her undiminished in amount in the case there was no violation of the conditions of the bail bond issued on behalf of Sparhawk. Issue was taken on the allegations of her complaint, and a trial was had before the court sitting without a jury, which resulted in a judgment to the effect that the appellant take nothing by her action.

On the question of the ownership of the money deposited, the evidence, as we read it, leaves but little doubt that it was the property of the appellant, and but little doubt that it was her understanding that it was to be deposited solely as security for a bail bond to secure the release from custody of Sparhawk pending his trial on the charges then pending against him. Indeed, we do not understand that the trial court questioned the evidence in this respect. While it made no formal finding with reference thereto, the judge announced at the conclusion of the arguments on the motion for a new trial that he was "willing under the record made here to make a further finding that Mrs. Young [appellant] is the owner of the money."

The trial court rested its conclusion on the ground that McGovern did not personally, or as the

agent of the bonding company, have any knowledge of the fact that the ownership of the money was in some person other than Mrs. Hossler at the time the writ of garnishment was served upon him, or at the time he answered to the writ, or at the time he paid the money into court in response to the order of the court; but that, on the contrary, he was led to believe and did believe at all such times that the money was the money of Mrs. Hossler. The evidence on these questions is conflicting.

The money was deposited in a bank at Ketchikan, Alaska, and was by that bank, by means of the telegraph, sent to a bank in the city of Spokane, with directions to pay the money to Mrs. Hossler. While McGovern saw the telegram, it contained no indication on its face of the actual ownership of the money other than the fact that it was directed to be paid to Mrs. Hossler. Mrs. Hossler's testimony is that she did not then know herself to whom the money belonged, but knew that it was not her money, and told McGovern at the time that it was the money of some one other than herself, and was to be used for purposes of bail only, and must be returned to the true owner. McGovern denies the statements, and testifies that he was not told at any time that the money was the property of any person other than Mrs. Hossler.

The evidence introduced in support of the testimony of the principals is also contradictory. But McGovern is supported by his course of conduct. He had no interest in the controversy between Mrs. Hossler and the attorney Lavin. To him it made no difference to whom the money was returned. When the writ of garnishment was served upon him, he took the advice of his general counsel, and answered the writ in accordance with their directions. Since he had no interest in favoring either party, it seems manifest that, if

he had understood the facts as Mrs. Hossler relates them, he would not have taken a course which was certain to lead him into a controversy with the possibility of loss.

Furthermore, as soon as liability on the bail bond was released, he so advised Mrs. Hossler by telephone and by letter, offering to return the balance of the money to her on the surrender of the receipt he had given her for the money. Receiving no response from Mrs. Hossler, he again, under date of December 7, 1927, wrote her making the same offer. To this letter Mrs. Hossler responded by letter under date of February 14, 1928. In this letter she claimed the money as her own, and refused to accept the tender solely because it was insufficient in amount, saying:

"There is only one way to settle with me and that is to pay me over the $1,000, one thousand dollars, that I placed with you. Otherwise, I shall commence proceedings against you in a higher court."

This letter was written some five months after the transaction with reference to the bail bond was closed, and, if her testimony on the witness stand be true, it is somewhat strange that she did not make the same claim at this time. We cannot conclude therefore that the trial court was in error in its findings as to the facts.

The legal question involved is whether the facts as found justify the judgment of the court. It is our opinion that they do. The appellant was an undisclosed principal, and the rule is general, said by some courts to be elemental, that one who contracts with the agent of an undisclosed principal, believing in good faith that the agent is the real party in interest, is entitled, if sued by the principal on the contract, to set up any defense which he could have set up against the agent had the latter been in reality the principal

and suing on his own behalf. *United States National Bank v. Leflore Grocer Co.*, 147 Miss. 43, 112 South. 700, 53 A. L. R. 407, and note; *Guggenheime & Co. v. Youell*, 53 Wash. 163, 101 Pac. 711. In this instance, had the money in question actually belonged to Mrs. Hossler, and had Mrs. Hossler sued for the return of the money, there is no question that McGovern could have offset against the action the judgment obtained against him in the garnishment proceeding. Having that right as against the agent, he may, under the rule stated, offset it against the action of the undisclosed principal.

There are other questions presented by the appeal, but as to these it is sufficient to say that we have examined them and find that they do not merit special consideration.

The judgment is affirmed.

MITCHELL, C. J., HOLCOMB, MAIN, and FRENCH, JJ., concur.